May it please the Court, Steve Sadie for Mr. Goff. This case involves whether Mr. Goff was in custody for Miranda purposes when, after a SWAT team arrested him, put him in handcuffs, seized evidence, put him in an ambulance, and transported him to a hospital, whether he was restricted in that hospital and couldn't leave, whether that constituted Miranda. They had only used his statements in impeachment, didn't they? They did use them in cross-examination, and they used them in rebuttal, but they did not make any distinction in the trial case between impeachment and substantive evidence. They were used substantively, which is not unusual under Oregon State law, because there, under Article I, Section 12 of the Oregon Constitution, the use of statements obtained in violation of Miranda are, they say, that that Haas and Harris are not relevant in that consideration. So that was not developed. But it would be something that on remand, perhaps, that it would be addressed. But the main issue that we're raising today is the failure to apply the correct standard, that the standard that was applied by the State judge was contrary to well-established Supreme Court authority that requires only objective tests in determining whether the person is in custody. Instead, the State judge said, well, what's absolutely decisive for me, what's significant, is what was in the head of the officer, because the officer said, I did not do a formal arrest because we were saving the money. We wanted the hospitalization to be covered by somebody other than the police agency. No evidence whatsoever at any place in the State proceedings is there any indication that Mr. Goff would have the slightest clue of who's paying for his hospitalization. And there's – it's absolutely well established that that constitutes a subjective factor, not an objective factor. And as we stated at the beginning of the hearing, the State judge said, well, I don't know. Kennedy, I think, presented it in Harris. In State – under State law, Harris would not apply, because Article I, Section 12, we're talking about a State prosecution. Second, it was a substantive use during the trial, so that as far as any determination of harmfulness, there was no distinction of, oh, well, we're saying that this should be cast out on his testimony in this way. It was for the absolute purpose of the statement. In fact, three times during the closing argument, the prosecution relied on those statements. This was not in any way – I don't think there was even any mention of impeachment as being the purposes of her testimony. It was to say, that's what he said. That shows that he's guilty. And when we're talking about this type of serious crime, that's where there is not a whole lot of witnesses involved, that something that relates to the credibility and to the substantive effect is certainly harmful, is certainly something that should be remedied. And in any event, because what we're really doing here is saying the State court didn't get it on how you determine the question of in custody. They did not apply the objective test. And what we need to do is vacate the conviction, send it back, and say, okay, don't – we've now decided that in defending the Federal Constitution, that in making that determination about Miranda, that the State court can go ahead and take a look at other factors, but those should be determined in the first instance by the lower courts. This Court should simply say it was contrary to well-established Supreme Court authority. If you look at the Berkemer statement where it says a policeman's unarticulated plan has no bearing on whether a suspect is in custody, Stansbury, the subjected views harbored by the interrogating officers or by the person being questioned are irrelevant. And most recently in the 28J letter, JDB, Justice Sotomayor in footnote 8 says, an interrogating officer's unarticulated internal thoughts, exactly what the judge related on in State court, are never, says never, in and of themselves objective circumstances of an interrogation. In that – we have absolutely well-established Supreme Court law saying you applied the wrong test. The simple thing to do here is to say, that is, under the 8 E.D.P.A., it's contrary to well-established Supreme Court authority. So now, under Thompson, you do an independent review. No difference. And with an independent review, the facts are completely clear that he fits the Miranda formula. The Miranda formula is, was he in custody or otherwise under such restriction that he would not feel free to terminate the interrogation and leave. He was in an alarm bed. There was somebody at the front door. He's told, you can't leave. And most critically, he's full custody arrest, measure 11 kidnapping, on an APB that got him there. I'm sorry. I'm being obtuse, I'm sure. But I'm kind of a, so what? All right. He was in custody. All right. They violated Miranda. So what? That's a violation of the Federal Constitution. And the so what is, that's why we're here, is to defend the Federal Constitution, enforce the Federal Constitution, and make it real in the real world. It's not just words. It may be somebody that we don't like because of the crime they're charged with. It may be that we're not sure about it. Scalia. But they only used it as a constitutionally permissible, as I understand it, and then there's no harm, no foul. Your Honor, if you look at the way that it was litigated in the State courts, they never said the word impeachment. They never was limiting instruction for impeachment. They never You're here arguing that because they're silent on the use of a word, we should ignore, look at the facts. Right? I'm You're saying just because they didn't say you're under arrest, he was still under arrest. Well, it was used for impeachment, as I understand from what I read. It's all came out after you had he had testified and nothing. No mention was made of his statements until after he had testified and in rebuttal. Am I wrong there? They were used in cross-examination and they were used in rebuttal. Well, all right. And so So they were used for impeachment. I think that impeachment is a limited term of art in the context of Harris and Haas, which, of course, doesn't apply in the actual case being litigated. What were they doing if they weren't impeaching? Excuse me? What were they doing if they weren't impeaching? They were creating substantive evidence that they were arguing to the jury showed that he was guilty of a crime. I think that's substantive evidence. But remember, what would Let me let me ask you this. Yes, sir. Did the defense counsel offer a limiting instruction that what was brought out in impeachment is just purposes of, you know, credibility and is not admitted for any substantive purpose and, you know, all that? He wouldn't do that because he's in an Oregon State court where, under Article 1, Section 12, that type of — once it's admitted, they're using it. He's objected. Remember, at this point, they're saying there was no Miranda violation. So he has no ground for saying that it should be used for limited purposes. The judge has said this can be used. And once it's being used, it's being — there's no Miranda violation, so there's not even a Harris-Haas issue. So we're kind of speculating down the line about what might have happened if there had been a different ruling. But the reality on the ground in State court is that it could not have been used for — it was used as substantive evidence, and there was no reason for a limiting instruction because the Miranda — Well, did the defense counsel make an objection to using it as positive evidence and not for impeachment purposes? I think that's what — No, I can see my evidence summary that I did 62 years ago right in front of me now. I mean, did — was there an objection made? Yes. He filed a motion to suppress. Once he — he said this is in violation of the Constitution to use this. The judge said, no, it's not. It's being used in court. It was used in court. He utterly preserved the issue. Nobody is saying that he did not preserve the issue, that it was a violation of the Constitution. What is the Oregon rule if it's not to allow such statements to use — be used for impeachment? State v. Isom is the Oregon case on the subject. And in Isom, the Court addressed the question whether there was a — whether there was a violation of Miranda, whether it could be used in cross-examination. They said, no, it can't be used under those circumstances. However, they left open the question of where there had not been a advice of rights as opposed to a question about a violation of Miranda, where the person invoked and they continued to ask. So that's exactly why it should be reversed and sent to the State court and for State law to be applied, because the question that the judge is raising about impeachment — that only goes to the question of whether it was harmful. It's only harmful determination has to be made under State law. The right place for that to go is back to State court. And it was — Well, you know, as soon as the — as soon as the jury hears that impeachment evidence, generally, that's the end of the ballgame. So — They won't hear the impeachment evidence if, under Oregon State law, it's not permitted under Article I, Section 12. That's why the — where the rubber hits the road on harmless error is in State court. Thank you, Your Honor. The acoustics aren't good in this room. Maybe it's me. If there are no further questions, I hope — Just repeat what you just said in the microphone. That the — where the rubber hits the road, where the — is in State court, because in State court is where they will be making the determination of whether they can use a statement in violation of Miranda as impeachment at all. It could be that under Oregon law, he would be — that it's not even a question of substantive or impeachment use. It would be a question of no use whatsoever, because under Article I, Section 12, it's construed to require it to be not used at all. All right. I understand. Thank you. Thank you. May it please the Court, Counsel, Paul Smith for Respondent Appellee, the Superintendent of the Oregon State Penitentiary. Mr. Smith, it looks to me like a very smart prosecutor looked at this and said, wait a minute, I don't want to risk using it. But then when he took the stand, he says, aha, now I can use it to impeach and end rebuttal. Is that — is that what happened? Well, Your Honor, I mean, procedurally, I don't know whether this was a very smart prosecutor or not, but what I can say is none of these statements were used in the State's case in chief. Okay. That's what happened, though. Right. He didn't touch it until it became protected under, what, Harris, the Harris v. New York. Well, I think the reason the prosecutor chose not to introduce this in the State's case in chief was, quite frankly, they weren't all that damning of statements. This wasn't an all-out confession here. This wasn't a case of whodunit or anything. I mean, everyone knows that Petitioner went into his estranged wife's house. The question is, did he break in? Did he hold her hostage? So the — He had all the evidence of the wife, right? The victim testified. The two victims testified. The wife and her daughter were both there. They both testified, and their testimony was very consistent. And the police testified as to what they found at the scene? Yes. Yes. There were officers who testified there. So, I mean, I think there are four reasons why this Court can and should affirm the district court's dismissal of the petition. First, there is no clearly established Supreme Court law on this issue. Second, even if there was, the State court's ruling wasn't contrary to or an unreasonable application of that law. Third, if we're going to start talking about what happened at the scene of the initial arrest, remember, Petitioner did receive Miranda warnings when he was initially taken into custody by the Portland police. So, you know, yes, he was taken into custody by a SWAT team before he was released to hospital personnel, but at that scene, he was given Miranda warnings. That's uncontradicted. In fact, Petitioner himself testified to that at the motion-to-suppress hearing. And finally, any Miranda error in this situation was harmless. Tell me, do you assert that he was not in custody? At the hospital, yes, Your Honor. At the hospital, he was not in custody for Miranda purposes, because the only reason he couldn't leave the hospital had nothing to do with law enforcement. It was because there was a medical and a mental health hold on him. He hadn't been discharged, and the hospital had a mental health hold on him. But he would have been arrested immediately if he'd tried to leave. Is that right? I think that is the strongest inference to be drawn from the record. I don't think Detective Timmius ever comes out and says that, but it's clear that's what happened. As soon as he was discharged, the Clackamas County Sheriff, Detective Timmius, was there to arrest him. What is the law of Oregon, as you understand it? Can these statements be used for impeachment purposes? Under ISM, as cited by my opposing counsel, it's correct that if statements are obtained in violation of the State constitution, those statements cannot be admitted for any purposes, impeachment or substantive evidence. Now, I think where counsel kind of takes ISM in the wrong direction is to suggest that there's no difference between substantive evidence and impeachment evidence in Oregon. That's not the law at all. Evidence can be used for substantive purposes or for impeachment purposes. Limited instructions are given to juries all the time in Oregon that this evidence is only for impeachment purposes. I don't believe such an instruction was requested in this case, but it's clear just from the timing of how this evidence was introduced, it wasn't introduced as substantive evidence. I don't recall that it was actually used in cross-examination of the Petitioner. It may well have been, but certainly the only time the statements were admitted into evidence was through rebuttal testimony that the State offered. Detective Timmius testified, and I think it's only for about 10 or 12 pages of transcript of a, you know, a 1,500 or, excuse me, a 1,000-page transcript here. Not very much testimony at all. The prosecutor was not relying heavily on these statements. Moreover, as I note in the brief, there was plenty of other impeaching evidence in this case. Both victims testified as to what happened. So it's not like the jury this was some magical evidence that all of a sudden the jury realized that defendant was telling the, excuse me, the Petitioner was telling a different story than the victims were in this case. The other thing that I'd like to focus on for just a second is whether there's any clearly established law. And I'd like to draw the Court's attention to a case actually cited for the first time in Petitioner's 28J memo, and that's the Howes v. Fields case from the Supreme Court. That case is really exemplary to establish what is clearly established for purposes of the custody determination. There, the Supreme Court unanimously determined that the Sixth Circuit's per se rule was not a clearly established rule with respect to the in-custody determination. The Sixth Circuit had announced a per se rule that someone was in custody if they were an inmate removed from the general prison population and questioned about events that occurred outside of the correctional institution. The Sixth Circuit said, as a per se matter, that person is in custody. And the Supreme Court unanimously said, no, that's not clearly established. There is no clearly established precedent for what is in custody in those circumstances. And I would suggest that that really stands for the proposition that when you're talking about the custody determination for Miranda purposes, it's a specific rule that the Supreme Court is looking at when deciding whether it's clearly established or not, not a general totality of the circumstances objective test. We agree, of course, that it is a totality of the circumstances test, but that's not enough for there to be clearly established Supreme Court precedent on this point. And that's what the Howe's case stands for. Moreover, even if the general Miranda rule satisfied the clearly established test in this case, here, there's no doubt that Miranda isn't violated where the only reason a suspect can't leave has nothing to do with law enforcement. Here, it's uncontradicted that Petitioner had a mental health hold on him at the hospital. He was not going to be allowed to leave the hospital, and it wasn't because the law enforcement was there. The doctors weren't letting him leave the hospital. And when you think about the reason for the Miranda rule, it's designed to counteract the inherently compulsive nature of a police-dominated atmosphere. That's not what we had here, and that's why Petitioner was not in custody. And I think, unless the I've made the four points that I wanted to make. I think the district court correctly concluded that there was no clearly established Miranda right violated in this case, and even if there was, any error didn't have a substantial and injurious effect on the Petitioner. Oh, I'm sorry. There is one other point I wanted to make, and that is, what was the State court judge's rationale here? Petitioner goes to great lengths to suggest that the State court judge was only concerned with what the detective's subjective reasons were, and that's where the State court judge erred. And I would just urge this Court to read the State court judge's ruling on this. I found it at Excerpt of Record, page 20, which is as it's quoted in the findings and recommendations of the magistrate judge in this case. The State court judge doesn't talk about the reason there was no custody being the subjective intentions of the officer. Instead, what the State court judge says is that the only legal issue for her is whether the hospital setting creates custody. What I understand the case law to mean is that being in custody in a hospital room by hospital personnel is not the same as being in custody of a law enforcement agency, such as Clackamas County Sheriff or the Portland Police Bureau or whoever. That's why I'm ruling the way I'm ruling, and that's exactly what the State court judge says here. The State court judge is not trying to get into Detective Timmius's subjective state of mind as this interview is being conducted. Unless there are any other questions, now I really will sit down. Go ahead. Can I have a moment for rebuttal, Your Honor? Your Honor. Thank you. First of all, what we just heard about Howe's, it's exactly what happened in the State court here. They created a per se rule based on a factor that the defendant doesn't know, which is who's got custody, who's maintaining the custody at that time when there is a seamless period of restriction from the time of a SWAT team arrest. Do those ---- So this is a habeas case. Yes. And it's very difficult to get over the hurdle if the State court was not clearly wrong. I think that's why there's two parts to it. One is, was it contrary to clearly established law? And that's where I think it's absolutely easy for the court to get there, because they see the court, the parts that I was just referring to from Supreme Court cases, completely say that if it's not something that the person would know about, that that is never a factor that can be considered. They considered a factor, which is, okay, who's got the custody? Is it the hospital custody? Do they have a formal hold on him or not a formal hold when he is absolutely restricted? So I think that the contrary is easy. I think, frankly, the unreasonable application, we still should win. It's a tougher go because you're looking at all of those factors and saying, could a reasonable juror look at all those things? But I think that either way, we get past ADPA deference, and we do get to the merits. And on the Miranda issue that was raised, on the first one, there's a number of them. Again, that's an issue that should be ---- can be addressed on remand, because, in fact, there's no statement that there was ever any Miranda waiver the day before. I have page 146 of the ER of the extradit of record. He says, I can't be sure whether I got it. And, of course, no officer ever says he did it. We don't know what was said. And it was different times by a different officer. Under these circumstances, there's no basis for finding that an earlier Miranda right would ---- advice of rights would have any effect. If I could just give the Court the ISM site, because we've been talking about it so much and I'm afraid that it did not find its way to the briefs, was 306 Pacific 2nd at 387, 1988 case. And lastly, I do urge the Court to look exactly at what the State court judge said at pages 171 to 172, because it's expressed, this is what I'm deciding the custody question on, and it's all about who's ---- who is custody, whether there was a formal State involvement or not. That's a fact that has nothing to do with the State court's view, with the mind of the person being interrogated. All right. Thank you. Thank you. This matter is submitted, and I will go to the next witness.
judges: Walter, Fletcher, Pregerson